UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENNIS BERRIOS,<br><br>*Plaintiff*,<br><br>v.<br><br>DERRICK HATWOOD,<br><br>*Defendant.* | No. 3:23-cv-20 (OAW) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Dennis Berrios, is a sentenced inmate[1] who is now housed at Cheshire Correctional Institution ("Cheshire CI") in the custody of the Connecticut Department of Correction ("DOC"). He is suing Defendant Correction Officer Hatwood under 42 U.S.C. § 1983. *See* Initial Review Order, ECF No. 13. He claims Officer Hatwood violated his rights under the Eighth Amendment to the United States Constitution by failing to protect him from an assault by another inmate while at MacDougall-Walker Correctional Institution ("MacDougall"). *Id*. Plaintiff seeks damages. *Id.* Defendant has moved for summary judgment. ECF Nos. 27, 27-1 (together, "Motion").

The court has reviewed Plaintiff's Complaint and related exhibits, ECF Nos. 1 through 1-4, the Motion, Defendant's Local Rule 56(a)(1) Statement of Facts ("Def.'s

---

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website shows that Plaintiff is serving a 30-year sentence for Manslaughter in the First Degree, as of December 9, 2016, and is housed at Cheshire CI. CT State Dep't of Corr., Inmate Information, available at: http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320252 (last visited March 30, 2025).

1

SOF") and related exhibits, including the partial transcript of Plaintiff's deposition, ECF Nos. 27 through 27-6, Plaintiff's Reply Memorandum in Opposition to the Motion ("Pl.'s Opposition"), ECF No. 28, Defendant's Reply, ECF No. 32, and the record in this matter, and is thoroughly advised in the premises.[2]

After careful review, the Motion is **GRANTED.**

### I.    BACKGROUND[3]

At the time relevant to the complaint, Plaintiff was a sentenced prisoner housed at MacDougall.  Def.'s SOF, ECF No. 27-2 at ¶ 1.  He avers Officer Hatwood is liable under Section 1983 for deliberate indifference to his health and safety while incarcerated there. *See* Pl.'s Compl., ECF No. 1; Order, ECF No. 13.  Plaintiff claims Officer Hatwood violated his Eighth Amendment rights because he was attacked and injured by inmate Miller after Officer Hatwood permitted Miller to enter his cell and failed to monitor it.  *See* Def.'s SOF, ECF No. 27-2 at ¶ 4; Pl.'s Compl., ECF No. 13; Berrios Dep. Tr. 93:6-20, ECF No. 27-4.

---

[2] The court denied Plaintiff's motion for extension of time to file a corrected objection and has struck his objection.  Order, ECF No. 33.  Plaintiff filed his motion for extension of time approximately nine months from the date Defendant's summary judgment motion was filed and he filed his corrected objection another two months after that.  See ECF Nos. 29, 31. As such, the court considers the Motion ripe for review.

[3] The page numbers cited in this ruling refer to the page numbers assigned by CM/ECF (the court's electronic case filing system) and not to the page numbers of the original documents, if any, except for citations to Plaintiff's deposition transcript.

Plaintiff has filed an objection but failed to file a statement of facts in compliance with Local Rule 56(a).[4] *See* Pl.'s Opp'n., ECF No. 28. Self-represented litigants are not absolved of their obligation to file a Local Rule 56(a)(2) statement. *Watson v. Caruso*, 424 F. Supp. 3d 231, 238 (D. Conn. 2019) (pro se defendants must follow all Rule 56 requirements) (internal quotation marks and citation omitted); *Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14-cv-01603 (DJS), 2017 U.S. Dist. LEXIS 32644, 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in the context of a *pro se* plaintiff's failure to submit a Local Rule 56(a)(2) statement that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure") (internal quotation marks and citation omitted). Thus, Local Rule 56(a)(1) allows this court to deem admitted Defendant's statement of facts for purposes of this motion where the statement is supported by cited evidence. *See* Local Rule 56(a); *Tyson v. Willauer*, 289 F. Supp. 2d 190, 194 (D. Conn. 2003) (deeming admitted for purposes of summary judgment motion all facts set forth in Defendants' L. R. 56(a)(1) Statement); *see also Small v. Clements*, No. 3:18-cv-01731 (KAD), 2019 U.S. Dist. LEXIS 192148, 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019) (deeming uncontroverted facts admitted where a litigant failed to file a responsive statement of facts).

---

[4] Defendant provided Plaintiff with the Notice to Pro Se Litigant to inform him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. *Notice to Pro Se Litigant*, ECF No. 27-3. Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the [c]ourt sustains an objection to the fact." Local Rule 56(a)(3) provides that "each denial in an opponent's Local Rule 56(a)(2) Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

However, to determine whether any material facts exist, the court considers Plaintiff's allegations in his verified complaint. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."); *Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 U.S. Dist. LEXIS 175244, 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes").  The court also relies on Plaintiff's deposition testimony. *Conquistador v. Adamaitis*, No. 3:19-cv-430 (KAD), 2021 U.S. Dist. LEXIS 39604, 2021 WL 810361, at *8 (D. Conn. Mar. 3, 2021) ("A party is bound by the facts he testifies to in a deposition and cannot defeat a motion for summary judgment by relying on a different version of events."); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

## II.   UNDISPUTED FACTS

### A. Description of Housing Unit at McDougall

On April 16, 2022, Plaintiff was housed with a cellmate on the second tier of MacDougall's H-1 (general population) Unit. Def.'s SOF ¶¶ 7, 32, ECF No. 27-2. Approximately 80 to 100 inmates were living in the H-1 unit at the time. Berrios Dep. Tr. 19:10-14, Ex. A, ECF No. 27-4.[5]  H-1 also has an officer's bubble next to its entrance where an officer is stationed for each shift. Def.'s SOF ¶ 11; Berrios Dep. Tr. 21:21-25.

---

[5] The court will reference Plaintiff's deposition transcript and Officer Hatwood's Declaration when the Defendant's Statement of Facts do not fully encompass the substance of the deposition testimony or Hatwood's Declaration.  The court will only reference the ECF numbers for these pleadings when first cited.

The officer's bubble is a secure area separated from the rest of the unit by locked doors and a glass divider.  Def.'s SOF ¶ 11; Berrios Dep. Tr. 22:1-19.

Inmates in H-1 cannot freely enter or leave their cells, as their doors are secured and must be opened by the officer in the bubble, using an electronic control panel.  Def.'s SOF at ¶ 14.  Each cell has an intercom that can be used to contact the officer in the bubble in case of emergency, *id.* at ¶ 12, but they do not have cameras, and no cameras in the unit permit the officer in the bubble to view into the cells.  Def.'s SOF at ¶ 13; Hatwood Decl., Ex. B at ¶ 8, ECF No. 27-5.

### B. Interaction between Plaintiff & Inmate Joyce Prior to Assault

At approximately 8:00 pm on April 16, 2022, a few hours before Officer Hatwood's shift, Plaintiff had an uncomfortable conversation and interaction with another inmate, inmate Joyce, while in H-1 during recreation.  Def.'s SOF at ¶¶ 23, 33. Joyce said some "rude" things to Plaintiff, and Plaintiff told him to "go fuck himself." *Id.* at ¶ 34.  Joyce went to his cell, came out with a weapon and showed it to Plaintiff, and invited Plaintiff to go into his cell for a fight. *Id.* at ¶ 35.  Plaintiff declined to fight Joyce. *Id.* ¶ 35.  Shortly after, Plaintiff returned to his cell but did not tell anyone about the interaction with Joyce. *Id.* at ¶ 36.  This incident was the first time Plaintiff had ever had any type of negative exchange with Joyce.  Berrios Dep. Tr. 53:11-16.  At 10:00 pm, all inmates in H-1, including Plaintiff, were secured in their cells for a count.  Def.'s SOF at ¶ 38.

### C. Officer Hatwood's General Duties & Job Description

At approximately 11:00 PM, Correction Officer Hatwood began his work on the third shift and was stationed at the H-1 officer bubble. *Id.* at ¶ 23.  As the third shift officer, his duties included touring H-1 every thirty minutes, including visual observation within

each cell, and letting out the inmate workers to perform their work duties during third shift. *Id.* at ¶ 24. When an inmate wanted to enter their cell, generally they would notify the officer in the bubble either by approaching the bubble to ask the officer, or by standing in front of their cell and getting the officer's attention by waving their hands or calling out their cell number. *Id.* at ¶ 25. Officer Hatwood avers that when an inmate would stand in front of their cell and wave their hands or call out their cell number, Officer Hatwood visually would make sure the inmate was seeking to enter his own cell. *Id.*

Officer Hatwood was the only correctional officer assigned to the third shift in H-1 on April 16, 2022. *Id.* at ¶ 22. When his shift began, he spoke with the second shift officer to get a rundown of any issues in the unit, but the second shift officer did not alert him to any issues in the unit. *Id.* at ¶ 27.

Shortly after Officer Hatwood started his work that night, he toured H-1 to ensure that everything was secured and all inmates were where they were supposed to be. *Id.* at ¶ 28. He did not observe any inmates out of place and was not alerted to any issues or concerns by any inmates. *Id.* at ¶ 29. Before that date, Plaintiff and Officer Hatwood had never had any issues with one another, nor had they ever formally interacted, and as of April 16, 2022, Officer Hatwood was not aware of any issues or hostilities between Plaintiff and any other inmates. Def.'s SOF at ¶¶ 30-31; Berrios Dep. Tr. 32:6-33:5, 53:11-16; Hatwood Decl. at ¶ 19.

### D. Description of Assault

At approximately 11:30 PM, Plaintiff was still secured in his cell when he heard his cell door "pop" open, but the door did not swing open, and no one entered his cell. Def.'s SOF at ¶ 39. He went outside his cell to determine why its door had opened, but he

6

determined that his presence was not needed and so he returned to his cell and closed the door. Def.'s SOF at ¶ 40; Berrios Dep. Tr. 45:7-46:18. He did not ask Officer Hatwood or anyone else why his cell door had opened. Def.'s SOF at ¶ 41.

A few minutes later, he vaguely heard his cell number being called out and then a second after that, his cell door popped open again. Def.'s SOF at 42; Berrios Dep. Tr. 48:13-49:3. Inmate Miller (not Joyce) opened Plaintiff's cell door, turned on the light, and rushed toward his bed, attacking and assaulting him. Def.'s SOF at ¶ 43. Plaintiff was shocked and surprised. Def.'s SOF at ¶¶ 45-46. Prior to the assault by Miller, Plaintiff had not had any interaction, conversation, or issues with him. Def.'s SOF ¶ 45; Berrios Dep. Tr. 49:7-50:2. Plaintiff estimates Miller hit him approximately ten or twelve times and then stopped, muttered, and walked out of Plaintiff's cell, without closing the door behind him. Def.'s SOF at ¶¶ 44, 48; Berrios Dep. Tr. 58:6-14.

Plaintiff then walked to the sink and stood in front of the mirror for twenty seconds to one minute trying to wipe the blood from his face. Berrios Dep. Tr. 59:1-20. He was bleeding profusely and concluded that he needed medical attention. *Id.* at 59:14-24. He did not use the call button in his cell. Def.'s SOF at ¶ 47. Instead, he put on his sneakers and exited his cell to go flag down Officer Hatwood. Berrios Dep. Tr. 59:23-24.

Plaintiff claims he intended to go to the officer's bubble but saw inmate Joyce standing by the staircase in H-1 with a weapon. Def.'s SOF at ¶ 49. Plaintiff then became involved in a physical altercation with Joyce near the top of that staircase. *Id.* at ¶ 51. According to Officer Hatwood, this altercation occurred at approximately 11:35 p.m. Hatwood Decl. at ¶ 17. During this altercation, he presumably had his hands on Joyce when Miller exited the nearby shower and punched Plaintiff in the back of the head. Def.'s

7

SOF at ¶ 53; Berrios Dep. Tr. 65:8-17.  Plaintiff's hands came off Joyce and he stumbled and fell to the ground.  Berrios Dep. Tr. 65:14-25.  At that point, Plaintiff picked up a garbage can and threw it at Miller.  Def.'s SOF at ¶ 54.

### E. After the Assault

The fight ended after Officer Hatwood screamed at them to stop and commanded the inmates to back to their cells.  Def.'s SOF ¶¶ 56-57; Berrios Dep. Tr. 67:7-14.  Other correctional staff arrived at H-1 shortly thereafter and removed the involved inmates from the unit.  Def.'s SOF at ¶ 58.  Officer Hatwood had no further involvement in this incident or with the inmates involved therewith after they were removed from H-1.  *Id.* at ¶ 59-60.

Officer Hatwood avers that approximately one month later, he reviewed an incident report completed by a supervisor concerning Plaintiff's altercation with inmates Miller and Joyce on April 16, 2022.  Def.'s SOF ¶ 62; Hatwood Decl. at ¶ 18.  The incident report that Plaintiff attached as an exhibit to his complaint indicates that video footage was reviewed.  Incident Report, ECF No. 1-4 at 2.  The report notes that on April 16, 2022, at approximately 11:25 p.m., Inmate Miller was walking on the top tier and turned his head to say something, that Plaintiff's cell was popped open, and that Miller entered it.  *Id.* Officer Hatwood asserts he had no recollection of opening Plaintiff's cell door, and if he did open the wrong cell door, it was an accident as he believed inmate Miller was one of the occupants of the cell whose door he requested to be opened.  Hatwood Decl. ¶¶ 18-19.  When deposed, Plaintiff asserted he did "not have any reason to believe yay or nay" that Officer Hatwood opened his cell door on purpose to allow inmate Miller to harm him.  Berrios Dep. Tr. at 87:4-9.  Plaintiff also agreed he could not speak to the state of mind

of Officer Hatwood, and he would have to speculate whether he opened the cell door purposefully so Miller could harm him. *Id.* at 87:10-23.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* "The court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.

1986)). Instead, the party opposing summary judgment must set forth "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (internal quotation marks omitted). At summary judgment, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact best left for determination by a jury at trial. *Anderson*, 477 U.S. at 249.

## IV. DISCUSSION

Defendant Hatwood argues he is entitled to judgment as a matter of law on Plaintiff's claim for deliberate indifference to Plaintiff's health and safety in violation of the Eighth Amendment, or in the alternative, that he is entitled to qualified immunity. Def.'s Mem., ECF No. 27-1.

### A. Eighth Amendment Deliberate Indifference

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Thus, it has long been recognized that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks and citations omitted); *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 833). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison

officials responsible for the victim's safety." *Ross v. Doe*, 610 Fed. Appx. 75, 77 (2d Cir. 2015).

"[U]nder 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citation omitted). Mere negligence will not suffice. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

For Plaintiff to prevail on a deliberate indifference claim, he must meet two requirements. First, that he was "incarcerated under conditions posing a substantial risk of serious harm." *Morgan*, 956 F.3d at 89 (2d Cir. 2020). Second, that Officer Hatwood had a "sufficiently culpable state of mind," which in "prison-conditions cases" is "one of deliberate indifference to inmate health or safety." *Id.* The first element has an objective component – Plaintiff must prove the deprivation was "objectively, sufficiently serious[.]" *Rivera v. Hackett*, No. 3:18-cv-969 (MPS), 2018 U.S. Dist. LEXIS 120074, 2018 WL 3489587, at *2 (D. Conn. July 18, 2018) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The second requirement has a subjective component and is twofold – Plaintiff must show that Officer Hatwood knew Plaintiff faced a substantial risk to his health or safety and disregarded that risk by failing to take reasonable measures to abate the harm. *See Farmer*, 511 U.S. at 834, 837. Thus, Officer Hatwood "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Id.* at 837.

For example, in *Flores v. Lantz*, No. 3:05-cv-1288 (RNC), 2008 U.S. Dist. LEXIS 76027, 2008 WL 4453421, at *1 (D. Conn. Sept. 30, 2008), summary judgment was

granted in favor of a correction officer where the plaintiff, a pretrial detainee, had alleged that officers violated his constitutional rights by failing to protect him from an attack by another inmate. Even though the officer clearly erred by opening the plaintiff's cell for the inmate who assaulted him, there was no evidence the officer was deliberately indifferent, as opposed to negligent. *Flores*, 2008 WL 4453421, at *6. The officer's affidavit and DOC records demonstrated that none of the defendants had notice that the inmate who assaulted plaintiff posed a threat to the plaintiff's safety prior to the assault. *Id*.

Likewise, in *Cook v. Connecticut*, No. 3:24-cv-01914 (VDO), 2025 U.S. Dist. LEXIS 33359, 2025 WL 606958, at *2–3 (D. Conn. Feb. 25, 2025), on initial review, the court dismissed a plaintiff's failure to protect claim against an officer where the officer's "negligent act of leaving [plaintiff's] cell door open and failing to pay attention to the safety of inmates [could not] form the basis of a failure to protect claim . . . ." *Cook*, 2025 WL 606958, at *2–3; see *Ross v. Correction Officers John & Jane Does 1–5*, 610 F. Appx. 75, 78 (2d Cir. 2015) ("While [the defendant] may have exercised poor judgment in temporarily leaving his post, deliberate indifference describes a state of mind more blameworthy than negligence.") (cleaned up); *Palacios v. Corr. Officer Doe*, No. 95-CV-6855, 1997 WL 458816, at *2 (S.D.N.Y. Aug. 12, 1997); *see also Harriell v. Cuzzupe*, No. 22-cv-3268 (RMB) (SAK), 2022 U.S. Dist. LEXIS 153902, 2022 WL 3703205, at *2-7 (D.N.J. Aug. 26, 2022) (dismissing failure to protect claim based on allegations that a correctional officer opened the cell door of an inmate who attacked the plaintiff, where the complaint failed to allege sufficient information about the officer's knowledge of the risk of serious harm).

Plaintiff has failed to establish as a matter of law that Officer Hatwood acted with deliberate indifference to his safety. *See* Def.'s Mem. at 13-19. Plaintiff alleges that Officer Hatwood "failed to protect [him by recklessly allowing inmate miller to come into [his] cell and viciously assault [him]" and that Hatwood "opened [his] cell door for another inmate purposely and knew or should [have] known that the other inmate entered [his] cell[.]" Compl. at ¶¶ 7-8, ECF No. 1-1. Here, Plaintiff has failed to present any evidence to support this claim. Specifically, Plaintiff has not presented any evidence showing that Officer Hatwood was even remotely aware that Inmate Miller or Inmate Joyce would assault Plaintiff, and that Officer Hatwood disregarded an excessive risk to Plaintiff's safety. The record fails to raise any inference of fact that Officer Hatwood had any awareness of inmate Miller's animosity or previous threatening conduct toward Plaintiff, or that he acted with any conscious disregard to Plaintiff's substantial risk of harm when he opened the door to Plaintiff's cell. No evidence in the record suggests Officer Hatwood was even aware that inmate Miller attacked Plaintiff after his cell door was opened and that he had an opportunity to intervene.

On the contrary, during Plaintiff's deposition, he testified that: (1) he did not tell any correction officers about the earlier altercation with inmate Joyce, Def.'s SOF Berrios Dep. Tr. 52:22-24; (2) Officer Hatwood was not present during Plaintiff's altercation with Joyce, *Id.* at 53:8-10; (3) the 8:00 PM altercation with Joyce was the first time Plaintiff "ever had any type of negative exchange[,]" with him, *Id.* at 53:11-16 (4) prior to the assault he did not know who Officer Hatwood was, and he had not ever had a formal interaction with him, *Id.* at 32:3-33:8; (5) Plaintiff had never had a negative experience with Officer Hatwood, *Id.* at 47:9-15; (6) the second time Plaintiff's cell door opened, he heard his "cell

13

number being called out vaguely[,]" *Id.* at 48:23-49:1; (7) prior to April 16, 2022, Plaintiff had no idea who inmate Miller was and had not had any issues with him, *Id.* at 49:7-50:2; (8) Plaintiff was surprised and shocked when Miller assaulted him, *Id.* at 57:10-13; (9) after he was assaulted by Miller, he left the cell to go tell Officer Hatwood what happened, instead of using the call button in his cell to seek help *Id.* at 59:21-59:24, 60:25-61:1; (10) the fight on the stairs with Joyce ended when Officer Hatwood screamed for Plaintiff and Joyce to stop, and commanded the inmates to go back to their cells, *Id.* at 67:7-18; and (11) he did "not have any reason to believe yay or nay" that Officer Hatwood opened his cell door on purpose to grant Miller access to harm him and he could not make any statements regarding Officer Hatwood's state of mind, *Id.* at 87:4-23.

Moreover, the incident report Plaintiff provided as an exhibit to his complaint, ECF No. 1-4 at 2, and Officer Hatwood's declaration, ECF No. 27-5 at ¶ 18, indicates that inmate Miller apparently yelled to have Plaintiff's cell door opened. Additionally, Officer Hatwood's declaration states that if he opened the wrong cell door, it was an accident because he believed Miller was an occupant of the cell he requested to be opened. ECF No. 27-5 at ¶ 18-19. The material facts in this case demonstrate that Officer Hatwood's opening of Plaintiff's cell door for inmate Miller amounted to, at most, negligence. As no reasonable jury could determine on this record that Officer Hatwood is liable for an Eighth Amendment violation for failure to protect Plaintiff or deliberate indifference to his health and safety, summary judgment must be granted in favor of Officer Hatwood.

### B. Qualified Immunity

"The doctrine of qualified immunity shields government officials from civil damages liability, unless the official violated a statutory or constitutional right that was clearly

established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets, and citations omitted).  A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk Cty.*, 17 F.4th 342, 367 (2d Cir. 2021) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)). Even when a right is clearly established, qualified immunity protects government officials when it was objectively reasonable for them to believe that their conduct in the particular factual context at issue did not violate that clearly established right.  *See Manganiello v. City of New York,* 612 F.3d 149, 165 (2d Cir. 2010).  "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 582 U.S. 120, 124 (2017).

     Here, even presuming Plaintiff had a clearly established Eighth Amendment right to be housed under conditions free from a surprise inmate attack, a reasonable officer would not have known that his conduct was unlawful.  As discussed previously, it is undisputed that Officer Hatwood had no reason to believe Plaintiff was at a substantial risk of harm, *i.e.*, that he would be assaulted by Miller or Joyce, let alone any inmate. Plaintiff's cell was in the general population H-1 unit, and the undisputed facts show that Officer Hatwood was not aware of any issues between Plaintiff and any other inmate, or that Miller had assaulted Plaintiff in his cell.  Officer Hatwood's conduct was at most negligent, and he had no reason to believe he was violating Plaintiff's constitutional rights

when he popped open the door to his cell or that an inmate entering it would lead to Plaintiff being assaulted. Accordingly, Defendant Hatwood also is entitled to qualified immunity. Thus, the motion for summary may also be granted on this alternative ground.

## V. CONCLUSION

For the foregoing reasons, it is thereupon **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, ECF No. 27, is **GRANTED.** The Clerk of Court respectfully is requested to please close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE